## NANCY, A SLAVE, v. THE STATE.

1. When a slave is indicted for an assault on a white person, with intent to kill and murder, and the verdict is " guilty of an assault with intent to kill" only, this will be considered as a finding of guilty of an assault with intent to kill, but not guilty of an intent to murder.

2. When a verdict is that the defendant is " guilty of an assault with intent to kill," without any other words, it will be referred to the charge in the indictment.

3. It is a capital offence for a slave to assault a white person with intent to kill, although if the intention had been consummated, the killing would have been manslaughter only.

WRIT of error to the Circuit Court of Montgomery county.

The indictment is against a slave for an assault with intent to kill and murder Mary Beasley, a white person.

The record of the trial and verdict is in these words, "whereupon came a jury, to wit: (here follows the names of twelve jurors) two thirds of whom being slave holders, who being elected, tried and sworn, well and truly to try, and a true deliverance to make, between the State of Alabama and the prisoner, Nancy, upon their oath do say, we find the said prisoner guilty of an assault, with intent to kill."

It is, therefore, considered, &c. (here follows a sentence of death by hanging, to be executed on the 30th day of December, now past.)

PRYOR, for the prisoner—insisted that the judgment of the court was not sustained by the verdict. It does not ascertain who she intended to kill, and is not responsive to the charge.

ATTORNEY GENERAL, for the State, argued that the verdict is sufficient, because it finds the essential requisites of the charge. Technical language is not necessary. [Chitty's Crim. Law, 644.]

Chap. 8, sec. 26, of the Penal Code, [Digest 442,] enacts that all indictments shall be good, if the offence be described as at common law. The addition of the words, "and murder," to the statutory offence, can neither avoid the indictment, or make it necessary to prove malice aforethought.

GOLDTHWAITE, J.—It is urged by the prisoner's counsel, that this conviction cannot be sustained. 1. Because the whole issue submitted to the jury, has not been responded to.— 2. That the verdict is too inconclusive and uncertain to warrant any sentence. 3. Because the finding of the jury is for a different offence from that charged.

1. We shall consider these questions in the manner in which they are presented; and first, as to the objection that the jury has not responded to the entire issue submitted to them. We think the necessary intendment of this finding, is, that the prisoner is not guilty of an assault, with intent to commit murder, but is guilty of an assault, with intent to kill only. It is true, that Hawkins says, it has been adjudged, that if the jury upon an indictment or appeal of murder, find the defendant guilty of manslaughter, without saying expressly as to the murder, it is insufficient and void, as being only a verdict for part. [2 Hawk. 620, § 5.] But the only authorities cited for this, are some decisions in the early part of the reign of Elizabeth, and we cannot ascertain, not having access to the books quoted, whether the law was thus held in favor of the prisoner, or against him, on a second trial for the same offence. It was, however, highly probable, that these decisions were made against the prisoner, as at that period, the rights of the subject were not as clearly recognized as they afterwards were. In Darnley's case, [4 Coke, 40,] the defendant pleaded not guilty to an appeal of murder, was found guilty of manslaughter, and had his clergy. Afterwards, he was indicted for murder, and pleaded the former conviction, in the appeal at

the suit of the party. It was adjudged a good plea, for it was a good bar by the common law; and the reason is, that a man's life shall not be twice put in jeopardy for the same office. So in Hays' case, [Strange 843, Ld. Raymd. 1518,] the defendant was indicted for forging a bond, for publishing such bond, and for publishing a certain bond, knowing it to be forged, and the jury found a special verdict, that he forged a bond, and published the same, but said no more. The court supplied what the jury ought to have done, and found him guilty of the two first offences, and not guilty of the third. These cases satisfy us, that the omission to find the entire charge, will not vitiate the verdict, if it is sufficiently certain in ascertaining the guilt of the prisoner as to any one offence which is included within the charge laid in the indictment; as to all which is not found, the conclusion must be, that the jury intended to acquit.

2. It is true, the verdict here does not refer to the indictment, by saying that the jury find the defendant guilty of an assault, with intent to kill, as charged therein, but it would seem absurd to conclude that they found any other assault with intent to kill.

The finding is within the issue, and that can be concluded from it, so for an assault with such intent, is a crime. It is said, that incident and necessary circumstances, shall be supplied by intendment, as in a general verdict, all circumstances which warrant the finding, shall be intended. [6 Comyn, 254, § 31; State v. Poindexter, 6 Rand. 667.] We think the finding is sufficiently certain and conclusive, to warrant judgment if the facts found, constitute a capital crime.

3. And this brings us to the principal question, whether an assault by a slave on a white person, with intent to kill, under circumstances which would not make the killing murder, if the assault had been fatal, is a capital crime.

By the Penal Code, it is made capital for a slave to conspire the murder of any white person. So, likewise, is the voluntary manslaughter of a white person, and even the involuntary manslaughter, if in the prosecution of an unlawful offence. [Clay's Digest, 472, § 1, 2.] Nor are these enactments new, as the same have continued in our statute book since 1814. The part of the Code which defines the offence of which this prisoner is convicted, is in these words, "or commit an assault with intent to kill any white person, and be thereof convicted, shall suffer death."

It is evident, from the whole scope of these laws, that something more was intended than to make it capital for a slave to attempt to murder a white person. The mere conspiracy to do this, is made capital. No other construction then, can reasonably be given, than to infer an intention to punish capitally, any voluntary attempt by a slave, to take the life of a white person, although the attempt, if executed, would make a case of manslaughter only.

We come then to the conclusion, that there is nothing in the reasons urged against this conviction, of sufficient weight to authorise us to pronounce the sentence of the court erroneous.

We may also add, that we have examined the transcript for other grounds of reversal, as we are required to do by the 7th section of the 13th article of the Penal Code, but find none. The sentence of death must, therefore, be affirmed, and as the day of execution has already passed, we order and direct that the prisoner, Nancy, now in confinement in the common jail at Montgomery, be taken from thence on Friday, the —— day of March next, to the place of execution provided by law, between the hours of ten o'clock, A. M. and four o'clock, P. M., and that she be there hanged by the neck until her body be dead. And that the sheriff of Montgomery county be charged with the execution of this sentence.