# CASES

IN THE

# SUPREME COURT OF ALABAMA.

DECEMBER TERM, 1883.

## Clifton *v.* The State.

*Indictment for placing Obstruction or Impediment on Rail-road.*

1. *Section 4239 of Code construed; character of offenses thereby created.* Section 4239 of the Code of 1876, declaring that "any person who wantonly or maliciously injures any railroad in this State, which is in use for the transportation of passengers or merchandise, or places any obstruction or impediment thereon, or salts stock thereon, must, on conviction, be fined not less than one hundred nor more than one thousand dollars, and, at the discretion of the court trying the cause, may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than six months, or may be imprisoned in the penitentiary for not more than ten years," does not create or declare an offense of different, distinct degrees, but three several offenses, all of the same nature, of the same grade, and subject to like punishment.

2. *Same; offenses created thereby felonies.*—It is the capacity of an offense to be punished by confinement in the penitentiary, and not that such punishment of necessity follows conviction, that distinguishes crime, and separates felonies from misdemeanors, in this State; and hence, the offenses created by said statute (Code of 1876, § 4239), falling precisely within the definition of a felony given by the statute—a public offense which *may* (not *must*) be punished by confinement in the penitentiary (Code of 1876, § 4095), are felonies, although, under the statute, persons convicted thereof may be fined, imprisoned in the county jail, or sentenced to hard labor for the county.

3. *Same; character of offense not changed by verdict imposing a fine.* In such case, the imposition, or the omission of the fine by the jury, on conviction, can not affect the character of the verdict, which must respond to the indictment; and hence, on a general verdict of "guilty as charged in the indictment," imposing a fine of $100, it is not error for the court, without rendering judgment for the fine, to sentence the defendant to confinement in the penitentiary for the term of three years.

, . [Clifton v. The State.]

4. *Same; whether imprisonment in penitentiary exclusive of other punishment, quære.*—Whether the statute (Code of 1876, § 4239) intends that confinement in the penitentiary, when imposed by the court, shall be the only punishment which shall follow conviction, where the jury impose a fine, is a question not raised by the record, and is not considered.

5. *Conviction under statute for placing obstructions on railroad does not render witness incompetent.*—The offense of wantonly or maliciously injuring a railroad, or of placing any obstruction or impediment thereon (Code of 1876, § 4239), not being a common law felony, and not having the elements of the *crimen falsi,* on the trial ot a defendant indicted therefor, a witness' complicity with, and conviction of the same offense does not render him incompetent, but merely affects his credibility.

6. *Motive for commission of crime; prosecution not required to prove.* The presence of a motive for the commission of the offense charged, while always a legitimate subject of inquiry, is not indispensable to a conviction, or an element of the burden of proof which the law devolves upon the prosecution, whether the agency or connection of the accused is manifested by direct and positive evidence, or only by circumstantial evidence; the criminal act and the connection of the accused with it being proved beyond a reasonable doubt, the act itself furnishes the evidence, that to its perpetratioh there was some cause or influence moving the mind.

7. *Instructions to jury; when properly refused.*—Instructions requested, which require additional or explanatory instructions to prevent them from misleading or confusing the jury, are properly refused.

8. *Placing obstruction on railroad; specific intent to injure not necessary.*—To make complete the offense of wantonly or maliciously injuring a railroad, or of placing an obstruction or impediment thereon, as defined by section 4239 of the Code of 1876, a specific intent to injure the railroad, or that the cars or trains running upon it should be thrown from the track, is not necessary; but if the acts denounced by the statute, or either of them, should be done intentionally, the criminal intent, the intent to do a wrongful, unlawful act, exists, and the offense is complete.

9. *Same; when proof of ownership of railroad not necessary.*—When an indictment under said statute (Code of 1876, § 4239) does not aver the ownership of the road, but designates it as a railroad in use for the transportation of passengers or merchandise, known as the "Alabama Great Southern Railroad," proof of ownership is not necessary; but the averments of the indictment are satisfied by evidence that it was known as the "Alabama Great Southern Railroad," and was in use for the transportation of passengers or merchandise.

APPEAL from Tuscaloosa Circuit Court.

Tried before Hon. S. H. SPROTT.

William Clifton, the defendant in the court below, appellant in this court, was indicted, tried and convicted under section 4239 of the Code of 1876. The averments of the indictment, the verdict of the jury, and the judgment rendered thereon are sufficiently set out in the opinion.

The evidence introduced on behalf of the State tended to show that on a designated trestle over a creek on the line of the Alabama Great Southern Railroad, in said county, the "fish bars" connecting the rails had been taken from the rails and laid thereon, "with the screws put under one end so that the cars might run upon said bars," in a way calculated to

throw a passing train off the track; and that the defendant, and one Woodin, who had been jointly indicted with the defendant, and who had been convicted, and sentenced to hard labor in default of the payment of a fine which had been imposed, prior to the trial, and "before the passage of the statute removing the disabilities of a witness who had been convicted of a crime," and another were the guilty parties. The State was allowed to examine said Woodin as a witness touching the commission of the offense, and the agency of the defendant therein, against the defendant's objection; and to this ruling he excepted. The evidence set out in the bill of exceptions fails to show the motive which prompted the commission of the offense. It was shown that the Alabama Great Southern Railroad Company "was a corporation duly created and existing under the laws of Alabama at the time of the trial, and also at the time when the alleged offense was committed, and the railroad was known during said time as the Alabama Great Southern Railroad, and owned and operated by said corporation, and was in use during all of said time and before, for the transportation of passengers and merchandise in the State of Alabama."

The defendant duly reserved exceptions to the refusal of the court to give the following charges requested by him, to-wit: 1. "If the jury believe from the evidence, that the State has failed to show any motive whatever on the part of the defendant for the commission of the offense charged, then they may weigh this total absence of motive as a circumstance in defendant's favor." 2. "Before the jury can convict the defendant in this case, they must be convinced beyond all reasonable doubt, that the defendant placed obstructions on the railroad track, or aided or abetted in placing them there, and that these obstructions were intended to do damage to, or obstruct, or throw off the track, the rolling stock, or some part thereof, belonging to the road, and was calculated reasonably to accomplish one of these results." 3. "If the jury believe from the evidence, that the State has failed to prove that the railroad, upon the track of which the obstructions were placed, was owned or operated by the Alabama Great Southern Railroad Company, at the time the said obstructions were placed upon the track, then they can not convict the defendant under the indictment in this case." 4. "If the jury believe from the evidence, that the State has failed to show any motive on the part of the defendant to commit the offense charged, then this absence of motive may, of itself, generate that reasonable doubt in the minds of the jury, which would require them to acquit the defendant." 5. "If the jury believe from the evidence, that the State has failed to show that the defendant placed obstructions on the railroad track, or aided or abetted in such

[Clifton v. The State.]

an act, with the willful intention of throwing the engine or some part of the train off the track, or of doing other injury or damage to such engine or train, or track, then they can not convict the defendant. That the intention to commit the crime charged is a necessary ingredient of the crime itself, and there can be no conviction, if any one of the jury continues to entertain a reasonable doubt of the existence of criminal intention on the part of the defendant."

McEACHIN & McEACHIN and J. M. MARTIN, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—The defendant (now appellant) was indicted and convicted under the statute (Code of 1876, § 4239) which reads: "Any person who wantonly or maliciously injures any railroad in this State, which is in use for the transportation of passengers or merchandise, or places any obstruction or impediment thereon, or salts stock thereon, must, on conviction, be fined not less than one hundred, nor more than one thousand dollars, and, at the discretion of the court trying the cause, may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than six months, or may be imprisoned in the penitentiary for not more than ten years." The indictment contains three counts. The first charges the wanton or malicious injury of a railroad in this State, in use for the transportation of passengers, known as the "Alabama Great Southern Railroad;" the second charges the placing of particular obstructions or impediments, feloniously or maliciously, on the same road, while in use for the transportation of passengers or merchandise; the third charges the unlawful and wanton placing of a designated obstruction upon the same road, while in like use. The jury returned a general verdict of "guilty as charged in the indictment," and imposed a fine of one hundred dollars upon the defendant. The court, without rendering judgment for the fine, sentenced the defendant to confinement in the penitentiary for the term of three years.

1. The sentence, it is insisted, is erroneous, because the statute creates or embraces two grades or degrees of offenses, a felony, and a misdemeanor; and the verdict of the jury is the equivalent of a finding, that a misdemeanor only had been committed, negativing the commission of a felony; while the punishment to which the defendant is sentenced, is that which can be visited only upon a felony, and constitutes the essential difference and distinction between the two grades of offenses, felony and misdemeanor. The verdict of a jury in criminal cases may be, and often is, either general or partial; in the one

VOL. LXXIII.

case, simply pronouncing in general terms the guilt or inno-
cence of the defendant; in the other, that a part of the accu-
sation is true, and a part untrue. If the verdict is partial, that
is, if a part of the accusation only is pronounced true, and as
to a part the verdict is silent, the conclusion of law is, that,
as to all which is not expressly found, the jury intend an ac-
quittal.—*Nancy v. State*, 6 Ala. 483; *State v. Burns*, 8 Ala.
313. So, if there are several counts in an indictment, a verdict
of guilty upon one count, not responding as to the others, is
the equivalent of a verdict of not guilty upon the latter counts.
*Nabors v. State*, 6 Ala. 200; *State v. Coleman*, 3 Ala. 14; *Bell
v. State*, 48 Ala. 684. Or, if the accusation is of an offense of
different degrees, a verdict of guilty of the inferior, is an ac-
quittal of the higher degree.—*Berry v. State*, 65 Ala. 117. If
upon a verdict of either kind, the court should sentence the
defendant to suffer other punishment, greater or severer, than
that which the law affixes to the offense of which he is found
guilty, the sentence would be inconsistent with the finding, un-
authorized, and errroneous. But this is not a case of that char-
acter, and there is no room for the application of the settled
rule to which we have referred. The statute does not create or
declare an offense of different, distinct degrees. Three several
offenses, all of the same nature, of the same grade, and sub-
jected to like punishment, are defined and declared. The first
is the wanton or malicious injury of a railroad; the second is
placing obstructions or impediments upon a railroad; the third
is the salting thereon of stock. Upon a conviction of either
offense, the jury may impose a fine upon the defendant. The
imposition of the fine is not a necessary result of the verdict
of guilty; the jury have a discretion, in all cases, to impose or
omit a fine, when the court may in its discretion add imprison-
ment, or hard labor for the county.—Code of 1876, § 4453.
The imposition, or the omission of the fine can not affect the
character of the verdict, which must respond to the indictment;
and that is an accusation of a felony, not of a misdemeanor;
and it is a felony as distinguished from a misdemeanor, because
it falls precisely within the definition of the statute, a public
offense which *may* (not *must*) be punished by confinement in
the penitentiary.—Code of 1876, § 4095. It is the capacity of
an offense to be punished by confinement in the penitentiary, and
not that such punishment of necessity follows conviction, that
distinguishes crime—that separates felonies from misdemeanors.
*Ex parte McCrary*, 22 Ala. 65. "If by the terms of the stat-
ute," it is said by Mr. Bishop, "the court or jury is at liberty
to inflict some milder punishment instead of imprisonment or
death, this discretion, it is held, does not prevent the offense
from being felony. That the *heavier* punishment *may* be im-

[Clifton v. The State.]

posed is sufficient."—1 Bish. Cr. Law (6th Ed.), § 619. The absurdities, incongruities, or inconsistencies attributed to the statute are imaginary, not real. The court is not authorized, as seems to be supposed, when the jury convict only of a misdemeanor, to reverse the finding, pronounce guilt, and inflict punishment for a felony. The jury respond to the indictment —they find the facts, declare guilt or innocence. If the finding is of guilt, it is guilt of a felony, because of the punishment which may follow; and the character of the finding is not changed, because the jury, in the exercise of their discretion, impose a pecuniary fine, the ordinary penalty incurred by the commission of a misdemeanor. The verdict is rendered with the knowledge that the court, in its discretion, may add corporal punishment, imprisonment in the county jail, hard labor for the county, or confinement in the penitentiary. It can not be doubted that the legislature may subject an offense to greater or less punishment, leaving the infliction or affixing of them to the discretion of the court, or to the discretion of the jury, or to their conjoint discretion. It is not punishing twice for the same offense; both, when imposed, constitute the punishment to which the law subjects the offender. The statute may intend that confinement in the penitentiary, when imposed by the court, shall be the only punishment which shall follow conviction. That is not now a question before us; it is the sole punishment to which the defendant was sentenced, and the sentence is authorized by the statute.

2. Without regard to the statute (Pamph. Acts 1882–3, p. 146) removing infamy (except as to a conviction of perjury or subornation of perjury), as an objection to the capacity or competency of witnesses, the witness Woodin was competent. His complicity with, and conviction of the offense with which the defendant was charged, affected his credibility, not his competency. The offense was not a common law felony, nor has it the elements of the *crimen falsi.*—*Commonwealth v. Dame*, 8 Cush. 384.

3. The first and fourth instructions requested by the appellant, and refused by the circuit court, are nearly allied, and may be considered in connection. The presence or absence of a motive for the commission of the offense charged is always a legitimate subject of inquiry. It is of more particular importance, deserving of more special consideration, when the identification of the accused as the criminal agent, or his connection with the offense depends entirely upon circumstantial evidence. But it is not, in any case, indispensable to a conviction; it is not an element of the burden of proof the law devolves upon the prosecution, whether the agency or connection of the accused is manifested by direct and positive evidence, or only by cir-

[Clifton v. The State.]

cumstantial evidence, that a motive, or inducement to commit the offense should be proved. The criminal act, and the connection of the accused with it, being proved beyond a reasonable doubt, the act itself furnishes the evidence, that to its perpetration there was some cause or influence moving the mind. There is no room for speculation as to its nature or character, and it avails nothing to the defense, that of it affirmative evidence is not adduced. "As the law will allow the inference of intent from the quality of the act itself, where its commission is manifest; so, from an intentional act, satisfactorily proved, it will allow the inference of a motive; intent implying nothing more than a certain state of mind or will, as motive implies a certain state of feeling or disposition, anterior to the former, and operating as its cause."—Burrill on Cir. Ev. 315. Construing the instructions we are considering, in the light of the evidence, it is apparent that they could not have been given without misleading the jury, unless additional instructions had been given, stating that if the criminal act and the connection of the appellant were clearly proved, the absence of evidence of motive was immaterial. Instructions requested, which require additional or explanatory instructions to prevent them from misleading or confusing the jury, are properly refused.

4. The second and fifth instructions are based upon the erroneous hypothesis, that the act of the defendant must have been accompanied with a specific intent to injure a railroad; or with the intent that the cars or trains running upon it should be thrown from the track by the obstructions or impediments. But it is apparent that the statute declares particular acts, violative of the rights of others, wrong and unlawful. If these acts, or either of them, should be done intentionally, the criminal intent, the intent to do a wrongful, unlawful act, exists, and the offense is complete. Ulterior consequences, wicked in themselves, may be intended, and if they are intended, the criminality of the act is aggravated, and it is deserving of more grievous punishment. The intent that such consequences shall result is not essential to the completion of the offense. That is complete when the act is done, which in itself is legally wrong.—*Stein v. State*, 37 Ala. 133; *Bain v. State*, 61 Ala. 75; *Commonwealth v. Temple*, 14 Gray, 69.

5. The ownership of the railroad it was not necessary to prove. The averments of the indictment were satisfied by evidence, that it was known as the " Alabama Great Southern Railroad,' and was in use for the transportation of passengers or merchandise.

Let the judgment be affirmed.